**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEE HERSKOWITZ,<br><br>　　Plaintiff,<br><br>　　v.<br><br>THE MEDICINES COMPANY, ALEXANDER J. DENNER, GENO J. GERMANO, JOHN C. KELLY, CLIVE MEANWELL, PARIS PANAYIOTOPOULOS, SARAH J. SCHLESINGER, and MARK TIMNEY,<br><br>　　Defendants. | Case No:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lee Herskowitz ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1.　　This is an action against The Medicines Company ("Medicines Company" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated

1

thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Medicines Company by Novartis AG ("Novartis") and Medusa Merger Corporation ("Merger Sub").[1]

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Medicines Company common stock.

7.      Defendant Medicines Company is a biopharmaceutical company that focuses on developing therapeutics for the treatment of therosclerotic cardiovascular disease. The Company is incorporated in Delaware with principal executive offices located in Parsippany, New Jersey.

---

[1] Merger Sub is an indirect, wholly owned subsidiary of Novartis.

The Company's common stock trades on the NASDAQ Global Select Market under the ticker symbol, "MDCO."

8. Defendant Alexander J. Denner ("Denner") is Chairman of the Board of the Company.

9. Defendant Geno J. Germano ("Germano") is a director of the Company.

10. Defendant John C. Kelly ("Kelly") is a director of the Company.

11. Defendant Clive Meanwell ("Meanwell") is Chief Innovation Officer and a director of the Company.

12. Defendant Paris Panayiotopoulos ("Panayiotopoulos") is a director of the Company.

13. Defendant Sarah J. Schlesinger ("Schlesinger") is a director of the Company.

14. Defendant Mark Timney ("Timney") is Chief Executive Officer ("CEO") and a director of the Company.

15. Defendants Denner, Germano, Kelly, Meanwell, Panayiotopoulos, Schlesinger, and Timney are collectively referred to herein as the "Individual Defendants."

16. Defendants Medicines Company and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITY

17. Novartis researches, develops, manufactures, and markets healthcare products worldwide. The Company is incorporated in Switzerland with principal executive offices located in Basel, Switzerland. Novartis American Depositary Receipts ("ADRs") trade on the New York Stock Exchange ("NYSE") under the ticker symbol, "NVS."

**SUBSTANTIVE ALLEGATIONS**

A. **Background of the Company**

18. Medicines Company develops inclisiran, "a small interfering RNA (siRNA) therapy being studied to evaluate its ability to lower low-density lipoprotein (LDL) cholesterol – also known as LDL-C or bad cholesterol."

19. Medicines Company obtained global rights to develop, manufacture and commercialize inclisiran under a license and collaboration agreement with Alnylam Pharmaceuticals.

20. Inclisiran has great potential, as it is "the first and only cholesterol-lowering therapy in the siRNA (small-interfering RNA) class . . . [which] [a]s a siRNA, . . . harnesses the body's natural process of RNA interference to specifically prevent production of the PCSK9 protein in the liver, which enhances the liver's ability to remove LDL-C from the bloodstream, thereby lowering LDL-C levels."

21. This year alone, Medicines Company has reported positive news concerning its Phase 3 trials for inclisiran, with corresponding increases in stock price. The consummation of the Proposed Transaction would deprive Medicines Company shareholders of growth potential in the value of their shares.

22. For example, on August 26, 2019 the Company announced positive topline results from its Phase 3 ORION-11 clinical trial of inclisiran. On this news, Medicine Company's stock price rose $4.82 per share or over 13% to close at $39.85 per share on August 26, 2019.

23. On September 2, 2019, the Company presented the full study results from its Phase 3 ORION-11 clinical trial of inclisiran at the ESC Congress 2019. On this news, Medicine Company's stock price rose $4.35 per share or over 10% to close at $46.31 per share the next

trading day, September 3, 2019.

24. On September 25, 2019, the Company announced positive results for its Phase 3 ORION-9 and ORION-10 studies of inclisiran. The ORION-9 and ORION-10 study each met all primary and secondary efficacy endpoints. On this news, Medicine Company's stock price rose $2.61 per share or over 5% to close at $49.75 on September 25, 2019.

**B. The Proposed Transaction**

25. On November 24, 2019, Medicines Company issued a press release announcing that it had entered into a definitive agreement with Novartis whereby Novartis would commence a tender offer to purchase all outstanding shares of Medicines Company for $85.00 per share in cash. The press release states, in pertinent part:

> **The Medicines Company Enters Into Definitive Agreement to be Acquired by Novartis AG for $9.7 Billion**
>
> **- The Medicines Company to be acquired by Novartis AG for $85 per share in cash, representing 45% premium to its unaffected share price and a 57% premium to its unaffected one-week average price**
>
> **- Inclisiran, The Medicines Company's investigational, innovative, potent twice-annual therapy to lower LDL cholesterol, has potential to transform treatment of cardiovascular disease**
>
> **- Transaction expected to be completed in first quarter of 2020**
>
> November 24, 2019 03:05 PM Eastern Standard Time
>
> PARSIPPANY, N.J.--(BUSINESS WIRE)--The Medicines Company (NASDAQ: MDCO) announced today that it has entered into definitive agreement in which Novartis AG will acquire The Medicines Company for $85 per share in an all-cash transaction, implying a fully diluted equity value of $9.7 billion. The price represents a premium of approximately 45% to The Medicines Company's closing share price of $58.65 on November 18, 2019 (the last trading day prior to news reports of a potential transaction between The Medicines Company and Novartis AG). The transaction was unanimously approved by the Boards of Directors of both companies.

*   *   *

Alexander J. Denner, Ph.D., Chairman of The Medicines Company Board of Directors, said: "This $9.7 billion transaction is a great outcome for shareholders of The Medicines Company. Not so long ago, The Medicines Company was at a crossroads due to the loss of its key revenue driver. I am proud of the company's transformation under a reconstituted board into a lean, highly focused team successfully advancing an exciting new therapy and creating tremendous value for patients and shareholders."

"We recognized the innovative promise of inclisiran and focused the company's resources to advance it from early development through phase 3 in 'record' time for the benefit of patients. Inclisiran has the potential to revolutionize the treatment of cardiovascular disease and profoundly improve the lives of millions of people around the world."

Dr. Denner continued, "Our vision for inclisiran is an affordable, widely available treatment that will dramatically reduce both the medical and economic burden of cardiovascular disease. Given the enormous capital required to realize its full potential, we have decided to sell to a company with resources and scale in excess of ours."

"On behalf of the board, I thank our outstanding management team and talented employees for their tireless work and dedication. I would also like to thank our partner Alnylam whose gracious support was invaluable in consummating this transaction."

Completion of the transaction is expected in first quarter of 2020, pending the successful completion of the tender offer and other customary closing conditions. Until that time, The Medicines Company will continue to operate as a separate and independent company. The company expects to file regulatory submissions for inclisiran in the U.S. in the fourth quarter of 2019 and in Europe in the first quarter of 2020.

Goldman Sachs & Co. LLC and J.P. Morgan Securities LLC are acting as financial advisors to The Medicines Company, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal counsel for The Medicines Company.

**Transaction Details**

Under the terms of the merger agreement, Novartis AG will commence a tender offer to purchase all outstanding shares of The Medicines Company for $85 per share in cash. Following the completion of the tender offer, a wholly owned subsidiary of Novartis AG will merge with The Medicines Company and shares of The Medicines Company that have not been tendered and purchased in the tender offer will be converted into the right to receive the same price per share in cash as paid in the tender offer (other than shares held by stockholders who properly

demand and perfect appraisal rights under Delaware law). The tender offer and the merger are subject to customary closing conditions, including the tender of at least a majority of outstanding shares of The Medicines Company and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. The tender offer and the merger are not subject to a financing condition.

26. On December 5, 2019, Medicines Company filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

### C. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions

27. The Solicitation Statement, which recommends that Medicines Company shareholders tender their shares to Novartis in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Medicines Company's financial projections; (ii) the financial analyses performed by Medicines Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Goldman Sachs & Co. LLC ("Goldman"), in connection with their fairness opinions; and (iii) the sales process leading up to the Proposed Transaction.

28. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Recommendation of the Board of Directors; (ii) Reasons for Recommendation; (iii) Certain Unaudited Prospective Financial Information; and (iv) Opinions of Financial Advisors.

29. The tender offer by Merger Sub, a wholly-owned subsidiary of Novartis, is set to expire at 12:00 midnight, New York City time, at the end of the day on January 3, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to

enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Medicines Company's Financial Projections

30. The Solicitation Statement omits material information concerning Medicines Company's financial projections.

31. The Solicitation Statement provides that, "[i]n connection with its evaluation of the Merger and the other Transactions . . . the Company's senior management prepared certain financial projections regarding the Company's anticipated future operations as a standalone company for the fiscal years ended December 31, 2019 through 2040" (the "Management Projections").

32. The Solicitation Statement provides "[a] summary of the Management Projections[.]"

33. The Solicitation Statement, however, fails to disclose the following concerning the Management Projections: (1) all line items used to calculate (i) EBIT, (ii) EBITDA, and (iii) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

34. When a company discloses non-GAAP financial metrics in a Solicitation Statement that was relied upon by its board in recommending that shareholders tender their shares pursuant to a tender offer, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics

8

disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

35.   The disclosure of Medicines Company's projected financial information is material because it would provide Medicines Company shareholders with a basis to project future financial performance of Medicines Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to tender their shares.

36.   Accordingly, in order to cure the materially misleading nature of the Management Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Solicitation Statement not misleading.

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Dec. 17, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

37. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Medicines Company shareholders.

### 2. Material Omissions Concerning J.P. Morgan's and Goldman Sachs' Financial Analyses

38. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by J.P. Morgan and Goldman Sachs.

39. The valuation methods, underlying assumptions, and key inputs used by J.P. Morgan and Goldman Sachs in rendering their purported fairness opinions must be fairly disclosed to Medicines Company shareholders. The description of J.P. Morgan's and Goldman Sachs' fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, Medicines Company shareholders are unable to fully understand these fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares. This omitted information, if disclosed, would significantly alter the total mix of information available to Medicines Company shareholders.

#### a. J.P. Morgan's Financial Analyses

40. The Solicitation Statement fails to disclose the following concerning J.P. Morgan's "*Discounted Cash Flow Analysis*": (1) all line items used to calculate the unlevered free cash flows that the Company is expected to generate during fiscal years 2019 through 2040; (2) the terminal asset value of the Company at the end of the 21-year period ending 2040; (3) the individual inputs and assumptions underlying the (i) perpetual growth rate of negative 5%, and (ii) range of discount rates from 10.5% to 12.5%; and (4) the Company's estimated 2019 fiscal year-end excess cash, option exercise proceeds, total debt and the impact of certain net operating losses accrued historically by the Company and net operating losses generated over the forecast period as

provided by management.

### b. Goldman Sachs' Financial Analyses

41. The Solicitation Statement fails to disclose the following concerning Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.0% to 11.0%, and (ii) perpetuity growth rates ranging from –10.0% to 0.0%; (2) all line items used to calculate the unlevered free cash flows to be generated by the Company for the period from September 30, 2019 to December 31, 2040; (3) the range of illustrative terminal values for the Company as of December 31, 2040; (4) the company's target capital structure weightings, the return on cash, future applicable marginal cash tax rate and a beta for the company, as well as certain financial metrics for the United States financial markets generally; (5) the ranges of illustrative enterprise and equity values for the Company; (6) the net cash of the Company as of September 30, 2019; and (7) the total number of fully diluted Shares outstanding as of November 21, 2019.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

42. The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

43. The Solicitation Statement provides that on February 15, 2019, Party B made a preliminary proposal for a global commercial partnership between Party B and the Company, pursuant to which "Party B would lead the commercialization of inclisiran world-wide, the Company would be entitled to certain milestone payments and the Company and Party B would equally split global profits and losses related to inclisiran" (the "Party B Proposal").

44. The Solicitation Statement provides that the Board discussed the Party B Proposal on February 26, 2019 but "determined that the terms of this proposal were not in the best interests

of the Company's stockholders and therefore determined not to pursue the Party B Proposal."

45. The Solicitation Statement, however, fails to disclose the specific terms and values of the Party B Proposal during the process leading up to the Proposed Transaction.

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Medicines Company shareholders.

**COUNT I**

**For Violations of Section 14(e) of the Exchange Act**
**Against All Defendants**

47. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

49. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

50. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

51. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

52. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

53. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

54. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

55. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

57. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

58. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall

> include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

59. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

60. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

61. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

62. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

63. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

64. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

66. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

68. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

69. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.    Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.    Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 17, 2019         Respectfully submitted,

**HALPER SADEH LLP**

/s/ Zachary Halper
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*